January 30th, 1818, Judge Roane pronounced the opinion of- this Court.
The Court
is of opinion, that those persons who have been made parties to this suit in consequence of the Decree of this Court pronounced on the fifth of May 1806, are not bound by that decree, either as a decree, or as a precedent, and ai*e now at liberty to shew that the liability to pay the legacy in question, supposed thereby to exist against them, as purchasers of lands under the brothers Philip, Thomas B. and John Bootes, does not exist. It is not binding on them as a decree, because they were no parties to the suit when it was pronounced; it is not binding on this Court as a precedent, because cases adjudged between other parties can only be safely rélied on as precedents, as to points actually in issue between those parties, and not as to such as may be deemed extrajudicial; unless, indeed, in relation to the latter, they shall, by various and successive decisions, have ripened into law. This would be the case, even if the facts appeared the same after the new parties made, as they did when the former decree was pronounced. In this case, however, as it respects the present appellants, who are understood to be persons holding as bona fide purchasers under John Rootes, altho’ the decree may bear the inter *95 jrt’etat'on, taking’ it literally, that the mere nomination of John as an executor, frustrated tlie requisition of the Codicil that he should give security on receiving his estate, yet even that is doubtful. Neither the original bill, nor the answers thereto, mention John’s nomination as execntor. The Bill merely states, that Philip and Thomas JR. were appointed Executors, and qualified and gave securities, the representatives of which securities are sought to he charged; and the answers admit these facts.
The Decree states, that the three sons were appointed Executors, and that thereby the requisition of security from those sons was frustrated; but that security ought to have been demanded by those executors of the testator’s fourth son George, when he should receive from them the, estate devised to him, and that, in default of taking’ such security, the Executors made themselves responsible for George’s proportion. Now, if John, never qualified as Executor, (and this is positively averred in the the answers of many of the defendants,) he could neither he the person who was to deliver the estate to George, nor could he be in default for not taking a bond which he had no right to require; any more than John Robinson and Humphrey Hill, who were also named as Executors, but who never qualified, could he made responsible for such default. The Court may have supposed, therefore, that it might thereafter appear that John had qualified: but, be this as it may, the principle of the Decree is to throw the responsibility on the party guilty of default; and, if the qualified Executors had as much right to demand security of John, on receiving his estate, as they would have had to demand security of him had he purchased at the sale of the estate, and if no Court would have decreed a delivery to him of his estate, without security, if demanded by the Executors, which is believed to be undeniable, then they were equally in fault in not taking security from him, as from George. Suppose neither of the sons had qualified; hut that Robinson and Hill had qualified, or administration with the will annexed, had been granted; ought those Executors, or the administrator to have delivered over the estate to Philip, Thom *96 as R. and John, without security, merely because they had been named as Executors? Why shall the mere nomnaition, made too in the body of the Will, of the sons as Executors, frustrate the codicil, made afterwards, requiring security? Not because the two provisions can not stand together; for, if so, the Codicil, which speaks of all the sons, would abrogate, their appointment as Executors. It must be on the ground that, when those Executors qualify and give bond, which invests them with the whole personal estate, and secures it’s faithful application according to the Will, no farther security was necessary. The Will having charged the whole estate with the payment of these legacies, altho’ it had previously given some specific legacies and the residue of the slaves and personal estate to the sons, ought, as to the slaves and personal estate, to be considered as a bequest of the residuum to the sons after payment of debts and legacies, and which the executors would be bound to see so applied, except so fax’ as they might be eased therefrom by the codicil, which authorises a delivery over, on bond being given. This, where it could be done, if good security was taken, would exonerate them from actual payment; but, where that could not be done, as in case of qualified Executors, who could not give bonds to themselves, the proper application of the fund must be made in the course of administration, and for which, or for default in not taking bond, their securities would be answerable. The principles of the decree would then seem to be at war with it’s letter, if it will bear the literal interpretation insisted on; and, consequently, it would be unsafe to rely on that literal interpretation as a binding precedent. Again, the amount of the personal estate, for which the Executors were responsible, was not shewn when the decree in question was pronounced, nor does it now fully appear; the Executors having been in default in not returning an inventory; but it sufficiently appeal's, (especially as no inference very favourable to executors making the default last mentioned will be drawn,) that it was considerable. The Will speaks of various plantations, with stocks of horses, cattle and hogs thereon; and it gives to his wife one fourth part of Ms slaves during life. The mortgage *97 given by Philip Rootes one of the Executors to Richard Shackleford" his security, to indemnify him, is for ten slaves, said to be those held the widow. Whether these were all that she held under the Will, is not stated; hut, if they were, this would make the whole number of slaves about forty. This mortgage was ample to indemnify the security, had he not permitted that property also to be squandered. When these things now appear, shall it be. said that innocent and bona fide purchasers of the real estate, (if even the original purchasers were now' before the Court,) shall be held liable, after this great lapse of time, in exoneration of the securities of the Executors, who permitted their principals rapidly to dilapidate and waste a large real and personal estate; for it appears they both died insolvent, at an early day; and when, too, one of those sureties, (as it now appears,) took ample counter security for his indemnity, as is aforesaid.
According to these principles, the decree in question ought not to prejudice tine purchasers under Philip and Thomas R. Rootes; and, although they have not appealed from the interlocutory decree in this case, yet these principles will equally apply to them w hen a final decree shall, be pronounced.
The principles nowr established arc, that all persons claiming any estate under Philip and Thomas R. Rootes the executors, or under John and George Rooies, for their proportional shares, (except bona fide purchasers, under them or either of them,) if any such can be found, should be, in the first place, liable to the demand of the appellees; and that the heirs, executors and legatees of the sureties of the said executors are liable in the next place, and ought to he called upon to contribute their proportional parts, so far as the estate, to them descended, devised, or otherwise come to their possession, may extend; the legatees and representatives of Richard Shackleford being alone chargeable with the amount of the value of the slaves, or other effects, which he or they received from the said Executors, or either of them, towards indemnifying him on account of his surety ship, and which has not been applied, in satisfaction of the *98 leSacy *n <l1 llGstion, or any other demand to which he was subject as surety aforesaid.
As to the lands of the appellants, the Court is of opinion, they ought not to be now charged, after the great lapse of time which has taken place; because it might admit of a doubt whether the charge was so much upon the land itself, by the terms of the Will, as upon the profits therereof;(1) because those lands might be presumed to be intended to be exonerated, by the requisition of security in the codicil; and because, above all, the testator is shewn to have, left an abundant personal estate to satisfy the legacies. It is greatly to be regretted that, so much delay and expense should have taken place, in consequence of the former decree of this Court, and, especially, as it regards the appellees, who were satisfied with the decree formerly appealed from; but this hardship can not justify a decree against persons not liable; any more than, in ordinary cases, where parties are directed to be made, against whom a decree may finally be found improper or unnecessary. Courts of Chancery lessen this evil in some degree, by refusing to give costs, against complainants, to parties made by their direction, and by throwing the general expenses of such enquiries on the parties at whose instance, or for whose benefit, such enquiries and costs were instituted and incurred;— which the Court thinks ought to be done in this case.
The Decree is therefore reversed with costs, and the cause remanded, to be farther proceeded in according to the principles above declared,

 Note. The words of the Will were, «which money must be “ raised out of my whole estate, after tile debts due to me are got in, and « the lands and other things, above directed to be sold, are applied «to that purpose; and ’tis my desire that, after my wife’s, my son « Philip’s and my sou Thomas Reid’s parts are taken out, the rest oí « my estate be kept together until the first of December after my son “ John■ shall arrive to lawful age, and then his part to be delivered to « him; and when my son George comes to lawful age. I desire his part « may be delivered to him; and, if any money remain after my debts and « legacies are paid, I desire it may be equally divided between my four « daughters. The Codicil directed «that the stock of hogs, cattle &c. on « his plantations in New ICent, and also his three lots in Fredcricks- “ burg, be soldfor the payment of his debts and legacies.”